**Court of Appeal No. 24-7093**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

*DENNIS HODGES, an individual*
*Appellant*

v.

*TODD GLORIA, both in his personal capacity and in his*
*official capacity as the Mayor of the City of San Diego*
*Appellee*

_____

*Appeal from the Order of the United States District Court*
*for the Southern District of California*
*Case No. 3:23-cv-02065-JW-MSB*
*The Honorable Judge Thomas J. Whelan, District Judge*

_____

**APPELLANT'S PETITION FOR REHEARING *EN BANC***

_____

*Advocates for Faith & Freedom*
*Robert Tyler, CA Bar No. 179572*
*btyler@faith-freedom.com*
*Julianne Fleischer, CA Bar No. 337006*
*jfleischer@faith-freedom.com*
*25026 Los Brisas Road*
*Murrieta, California 92562*
*Telephone: 951.600.2733*

*Counsel for Appellant Dennis Hodges*

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ...................................................................... ii

I. STATEMENT IN SUPPORT OF REHEARING *EN BANC*.................................1

II. SUMMARY OF FACTS...........................................................................2

    A.    Factual Background...........................................................................2

    B.    Procedural History...........................................................................3

III. ARGUMENT .........................................................................................5

    A.    The Rights To Free Speech And The Free Exercise Of Religion Are Among The Most Fundamental Protections In The Constitutional Order And Removing Them From An Entire Class Of Government Employees Is A Question Of Exceptional Importance. ...................................................................................5

    B.    The Panel's Decision to Categorically Apply the Policymaker Exception is in Contradiction to Existing Supreme Court Precedent, And En Banc Review is Necessary to Resolve This Conflict. ...................................................................................8

        1.    The Panel's Categorical Application of the Policymaker Exception Conflicts With *Pickering* and Its Progeny................8

        2.    The Panel's Failure to Separately Analyze the Free Exercise Claim Conflicts With *Kennedy* and *Masterpiece* ....................10

    C.    The Panel's Application of the Policymaker Exception Conflicts With the Approach of Every Other Appellate Circuit; Therefore, *En Banc* Review is Necessary to Clarify The Circuit Split or Provide Uniformity..................................................................13

IV. CONCLUSION....................................................................................14

CERTIFICATE OF COMPLIANCE......................................................16

CERTIFICATE OF SERVICE ...............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Pataki,*
   185 F.3d 35 (2d Cir. 1999) ................................................................13

*Barker v. City of Del City,*
   215 F.3d 1134 (10th Cir. 2010) ........................................................14

*Bonds v. Milwaukee Cnty.,*
   207 F.3d 969 (7th Cir. 2000) ...........................................................14

*Borzilleri v. Mosby,*
   874 F.3d 187 (4th Cir. 2017) ...........................................................14

*Brady v. Fort Bend Cnty.,*
   145 F.3d 691 (5th Cir. 1998) ...........................................................14

*Chiles v. Salazar,*
   146 S. Ct. 1010 (2026) ...................................................................5, 6

*Connick v. Myers,*
   461 U.S. 138 (1983) .......................................................................5, 6

*Curinga v. City of Clairton,*
   357 F.3d 305 (3d Cir. 2004) .............................................................14

*Elrod v. Burns,*
   427 U.S. 347 (1976) ...........................................................................6

*Everson v. Bd. of Educ. of Ewing Twp.,*
   330 U.S. 1 (1947) .............................................................................12

*Flynn v. City of Bos.,*
   140 F.3d 42 (1st Cir. 1998) .............................................................13

*Fulton v. City of Phila.,*
   593 U.S. 522 (2021) ...........................................................................7

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) ......................................................................9, 10

*Gonzalez v. Benavides,*
   712 F.2d 142 (5th Cir. 1983) ...........................................................10

*Hall v. Ford,*
   856 F.2d 255 (D.C. Cir. 1988) .........................................................13

*Hinshaw v. Smith,*
   436 F.3d 997 (8th Cir. 2006) ...........................................................14

ii

*Hodges v. Gloria*,
   No. 23-CV-2065 W (MSB), 2024 WL 3153213 (S.D. Cal. June 24, 2024)..........4
*Hodges v. Gloria*,
   No. 24-7093, 2026 WL 540374 (9th Cir. Feb. 26, 2026).......... 2, 6, 7, 8, 9, 10, 14
*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ........................................................ 1, 5, 6, 7, 9, 10, 11, 12
*Lathus v. City of Huntington Beach*,
   56 F.4th 1238 (9th Cir. 2023)........................................................ 4, 6, 7, 8, 10
*Leslie v. Hancock Cnty. Bd. of Educ.*,
   720 F.3d 1338 (11th Cir. 2014)....................................................................14
*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
   584 U.S. 617 (2018) ....................................................................................11
*O'Hare Truck Serv., Inc. v. City of Northlake*,
   518 U.S. 712 (1996) ......................................................................................9
*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*,
   391 U.S. 563 (1968) ..................................................................................1, 8
*Rose v. Stephens*,
   291 F.3d 917 (6th Cir. 2002)........................................................................14
*Rutan v. Republican Party of Ill.*,
   497 U.S. 62 (1990) ........................................................................................6
*Torcaso v. Watkins*,
   367 U.S. 488 (1961) ..................................................................................5, 12
*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ....................................................................................12

## Statutes

42 U.S.C. § 1983 ................................................................................................3

## Rules

Fed. R. App. P. 40(b) ..................................................................................1, 13

## Other Authorities

San Diego Municipal Code § 26.0801(a) ...........................................................2

iii

## I. STATEMENT IN SUPPORT OF REHEARING *EN BANC*

Pastor Dennis Hodges respectfully petitions for rehearing *en banc* of the panel's decision, which dismissed his Free Speech and Free Exercise claims solely on the basis of policymaker status without conducting any independent free exercise analysis. Under Federal Rule of Appellate Procedure 40, an *en banc* hearing or rehearing may be ordered if the panel decision conflicts with a decision of the United States Supreme Court, the panel decision conflicts with an authoritative decision of another United States court of appeals, or the proceeding involves one or more questions of exceptional importance. Fed. R. App. P. 40(b)(2). In this matter, all three of these are satisfied.

First, this proceeding presents a question of exceptional importance: Does the categorical application of the policymaker exception, which is contrary to every other sister circuit court's approach, infringe upon a public servant's First Amendment rights when the speech at issue is religious in nature. This issue strikes at the heart of religious liberty and civic participation in a diverse Republic. *See* Fed. R. App. P. 40(b)(2)(D). Second, the panel's one-step "commonality of political purpose" test collapses distinct free-speech and free-exercise analyses into a single binary inquiry, contrary to *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), *Pickering v. Board of Education*, 391 U.S. 563 (1968), and their progeny. *See* Fed. R. App. P. 40(b)(2)(B). Third, the Ninth Circuit now stands alone among the circuits in refusing any form of *Pickering* balancing or any free-exercise scrutiny when a policymaker's speech or religious expression is at issue. *See* Fed. R. App. P. 40(b)(2)(C). Judge Barker's concurrence expressly flags this split and calls for

1

clarification. *See Hodges v. Gloria*, No. 24-7093, 2026 WL 540374, at *3 (9th Cir. Feb. 26, 2026) (Barker, J., concurring) ("Federal courts would benefit from clarification of that circuit split and how the policymaker exception fits with free-speech and free-exercise claims in the public-employment domain.").

## II. SUMMARY OF FACTS

### A. Factual Background

Pastor Dennis Hodges is an ordained pastor who has led his church for fourteen years and has a decades-long record of public service, including as a corrections officer, captain in the California Department of Corrections, San Diego Police Department chaplain, and volunteer member of both the San Diego Police Advisory Board and the San Diego County Human Relations Commission. 1 ER 107, 17, 19, 34-37.

In July 2017, the San Diego City Council appointed Pastor Hodges to the unpaid, volunteer Citizens Advisory Board on Police/Community Relations ("Police Advisory Board"). 1 ER 105, 107, ¶¶ 12, 22. The Board's sole function is advisory: it studies, consults, and makes non-binding recommendations to the Mayor, City Council, and City Manager on police/community relations and crime-prevention programs. ER 106, ¶ 23-24; San Diego Municipal Code ("SDMC") § 26.0801(a). Board members have no authority to implement policy, speak on behalf of the Mayor, or control any government operations. SDMC § 26.0801, et seq.

In March 2021, the San Diego County Supervisor appointed Pastor Hodges to the County Human Relations Commission. 1 ER 107, ¶ 32. In November 2021, during "transgender awareness month," some commissioners moved to amplify

transgender voices. 1 ER 108, ¶¶ 42, 43. Pastor Hodges abstained from voting on the agenda item, explaining that his sincerely held religious beliefs that God created humans as male and female and that transgenderism is a sin prevented him from voting to celebrate behavior that conflicts with those beliefs. *Id.* He did not advocate mistreatment of any person. *Id.*

Nearly a year and a half after Pastor Hodges expressed his religious beliefs, on August 8, 2023, Mayor Todd Gloria vetoed Pastor Hodges' reappointment to the *Police Advisory Board* expressly because of the religious views he had expressed while serving on the *County Commission*. 1 ER 109-10, ¶ 61. Mayor Gloria stated that he acted because Pastor Hodges had made "concerning public comments about LGBTQ people—specifically, the transgender community." 1 ER 109-10, ¶ 62.

Pastor Hodges' religious beliefs and statements on the County Commission were unrelated to his advisory duties on the Police Advisory Board, had no effect on his performance, and did not impair the Board's work. 1 ER 110, ¶ 64.

## B.     Procedural History

Pastor Hodges filed the present lawsuit on November 8, 2023. 1 ER 121. On December 12, 2023, Mayor Gloria filed a motion to dismiss. 1 ER 119-20. On December 28, 2023, Pastor Hodges filed his First Amended Complaint ("FAC") which asserts three causes of action under 42 U.S.C. § 1983 for: (1) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution; (2) Violation of the Free Speech Clause of the First Amendment to the United States Constitution; and (3) First Amendment Retaliation. 1 ER 103. On January 11, 2024, Mayor Gloria filed a new motion to dismiss the FAC. 1 ER 78-79.

3

The district court dismissed the FAC under *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (9th Cir. 2023). *See Hodges v. Gloria*, No. 23-CV-2065 W (MSB), 2024 WL 3153213 (S.D. Cal. June 24, 2024), reconsideration denied, No. 23-CV-2065 W (MSB), 2024 WL 4547009 (S.D. Cal. Oct. 22, 2024). A panel of this Court affirmed, holding that they are bound by *Lathus*. *See Hodges v. Gloria*, No. 24-7093, 2026 WL 540374 (9th Cir. Feb. 26, 2026). In *Lathus*, the Ninth Circuit held that a volunteer advisory board member was a policymaker because she was appointed by the official who removed her, spoke to the public and other policymakers on behalf of that official, and helped formulate plans for implementing broad policy goals. *Lathus*, 56 F.4th 1238. However, *Lathus* did not involve or address *religious speech*. The district court and panel's extension of *Lathus* to permit termination for religious speech on an unrelated matter presents the precise conflict warranting *en banc* review.

This Petition should be granted because the panel decision presents a question of exceptional importance, directly conflicts with binding Supreme Court authority, and deepens the Ninth Circuit's status as a lone wolf in an inter-circuit split—error that only the *en banc* Court can resolve. Rehearing *en banc* is warranted under Rule 40.

4

## III. ARGUMENT

**A.     The Rights To Free Speech And The Free Exercise Of Religion Are Among The Most Fundamental Protections In The Constitutional Order And Removing Them From An Entire Class Of Government Employees Is A Question Of Exceptional Importance.**

"That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent." *Kennedy*, 597 U.S. at 523–24. The rights to free speech and free exercise are not second-class rights that evaporate the moment a citizen volunteers for public service. Yet, the panel decision does exactly that by holding that a volunteer on a community-relations advisory board may be excluded from service solely for expressing religious convictions on a matter of public concern, without any balancing of interests or narrow-tailoring inquiry.

This holding has sweeping consequences. If the policymaker exception operates as a categorical bar, elected officials may now impose a religious test. Such a result is irreconcilable with *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961) ("neither a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.'"), and with the principle that "respect for religious expressions is indispensable to life in a free and diverse Republic." *Kennedy*, 597 U.S. at 543.

Speech on "matters of public concern" is "the essence of self-government." *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Chiles v. Salazar*, 146 S. Ct. 1010, 1024 (2026) ("The Constitution does not protect the right of some to speak freely; it

5

protects the right of all. It safeguards not only popular ideas; it secures, even and especially, the right to voice dissenting views."). The panel's mechanical rule denies the public the benefit of informed civic discourse from precisely those citizens most qualified to provide it.

"The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990) (emphasis added). The policymaker exception, as applied here, skips any weighing of speech rights or the public's interest in open discussion. If the government seeks to restrict an employee's First Amendment rights, it must do so by the least restrictive means. *Elrod v. Burns*, 427 U.S. 347, 367 (1976). A categorical application of the exception, however, treats religious speech as a second-class right—even though "speech occupies the highest rung of the hierarchy of First Amendment values" and "is the essence of self-government." *Connick*, 461 U.S. at 145.

The panel further held that Pastor Hodges failed to show how his religious motive altered the *Lathus* analysis. *Hodges*, 2026 WL 540374, at *2. That conclusion misses the mark. When speech is both religious and expressive—as it was here—both constitutional guarantees are implicated and must be analyzed separately. The Free Exercise and Free Speech Clauses "work in tandem," and religious speech receives "double protection" under both. *Kennedy*, 597 U.S. at 523, 540, 543. As the Supreme Court has emphasized, "[r]espect for religious expressions is indispensable to life in a free and diverse Republic." *Id.* at 543; *see also Chiles*, 146 S. Ct. at 1029

6

("[T]the First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country."). The right to free exercise is "a bedrock constitutional right" that presents "an important constitutional question that urgently calls out for review." *Fulton v. City of Phila.*, 593 U.S. 522, 596 (2021) (Alito, J., concurring). It is "fundamentally at odds" with leaving the protection of religious liberty to the political process. *Id.* at 534 (Alito, J., concurring). The Bill of Rights was designed "to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials." *Id.* By applying the policymaker exception as a blanket rule—without any Free Exercise analysis—this Court effectively returned religious liberty to the political process the Framers sought to insulate. Public officials may now demand "commonality of religious beliefs" instead of "commonality of political purposes," creating the very religious test the First Amendment forbids. *See* Dkt. No. 8.1, Appellant's Opening Br. At 30-33 ("Appellant's Br.").

Judge Barker's concurrence highlights the stakes: the Ninth Circuit's approach "analyzes the First Amendment rights to freedom of association, freedom of speech, and free exercise of religion under *a single test* in the context of public employment." *Hodges*, 2026 WL 540374, at *2 (Barker, J., concurring) (emphasis added). That single-test framework risks undermining the Supreme Court's repeated assurance that public employees do not forfeit their constitutional rights at the workplace door. *Kennedy*, 597 U.S. at 530; *see also Hodges*, 2026 WL 540374, at *2 (Barker, J., concurring) ("*Lathus*'s approach may be in tension with broader principles of First Amendment jurisprudence, which seek to account for the

7

sometimes-complex interplay between the government's interests and a given First Amendment right."). *En banc* review is essential to prevent this erosion of bedrock liberties.

By declining to apply either the *Pickering* balancing test to the free-speech claim or the distinct free-exercise framework, the panel decision raises a question of exceptional importance that this Court cannot ignore.

**B.** **The Panel's Decision to Categorically Apply the Policymaker Exception is in Contradiction to Existing Supreme Court Precedent, And En Banc Review is Necessary to Resolve This Conflict.**

*1.* *The Panel's Categorical Application of the Policymaker Exception Conflicts With Pickering and Its Progeny*

The panel held that once a position requires "commonality of political purpose," the *Branti*/*Elrod* exception applies categorically and *Pickering* balancing is unnecessary. *Hodges*, 2026 WL 540374, at *1 (citing *Lathus*, 56 F.4th at 1243 n.2). That holding cannot be reconciled with Supreme Court precedent.

The Supreme Court has consistently required courts to apply the *Pickering* balancing test when a public employee's speech on a matter of public concern is at issue. Under *Pickering*, courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The Court has never carved out a categorical exemption for "policymakers" when the challenged action is based on the content of the employee's speech rather than mere political affiliation.

8

As Judge Barker recognized in his concurrence, courts ordinarily apply a balancing test under *Pickering* and *Garcetti*. *Hodges*, 2026 WL 540374, at *2 (Barker, J., concurring). The Supreme Court has never retreated from this requirement. In *Kennedy*, the Court reaffirmed that "[w]hen a public employee speaks as a citizen on a matter of public concern, courts balance the employee's speech interests against the public employer's interest in efficiently performing public services." *Kennedy*, 597 U.S. at 527–28. Similarly, in *O'Hare Truck Service, Inc. v. City of Northlake*, the Court expressly contemplated that cases involving "specific instances of the employee's speech or expression . . . intermixed with a political affiliation requirement" would still demand *Pickering* balancing. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 719-20 (1996).

*Garcetti v. Ceballos*, 547 U.S. 410 (2006), further affirmed the ongoing vitality of the *Pickering* framework. The panel's one-step, categorical rule eliminates the very balancing that the Supreme Court has repeatedly mandated. As Judge Barker observed, the policymaker exception "began as a simple, binary test" for political affiliation cases but "has evolved in this circuit to govern *any* First Amendment claim." *Hodges*, 2026 WL 540374, at *3 (Barker, J., concurring) (emphasis added). That expansion cannot survive scrutiny under Supreme Court precedent.

The Supreme Court has repeatedly emphasized that public employees do not forfeit their First Amendment rights simply by virtue of their public employment. *Kennedy*, 597 U.S. at 530. Because speech rights are fundamental, they require "jealous protection" through a case-by-case analysis that "abjures a mechanical

9

response." *See Gonzalez v. Benavides*, 712 F.2d 142, 147 (5th Cir. 1983). The *Pickering* framework properly accounts for both the employee's interest in speaking as a citizen and the public's broader interest in "informed views" made possible through "open civic discussion." *Garcetti*, 547 U.S. at 419.

The panel rejected Pastor Hodges' argument for a weighted *Pickering* balancing test solely on the ground that it is bound by *Lathus*, which held that an employee can be fired for purely political reasons without *Pickering* analysis if the *Branti/Elrod* exception applies. This categorical application of the policymaker exception is fundamentally inconsistent with the Supreme Court's First Amendment jurisprudence.

2.    *The Panel's Failure to Separately Analyze the Free Exercise Claim Conflicts With Kennedy and Masterpiece*

The panel dismissed Pastor Hodges' free-exercise claim, concluding that religious motive does not "change[] the court's evaluation." *Hodges*, 2026 WL 540374, at *2. This approach constrains two distinct constitutional protections into a single inquiry and directly conflicts with Supreme Court precedent.

Under *Kennedy*, the Supreme Court made clear that religious expression receives "double protection" under both the Free Exercise and Free Speech Clauses. *Kennedy*, 597 U.S. at 543. Once a plaintiff demonstrates that government action burdens sincere religious practice, the government bears the burden of satisfying strict scrutiny. *Id.* at 525. The panel, however, never required the Mayor to articulate a compelling governmental interest, much less demonstrate that its action was

10

narrowly tailored. Instead, it treated the Free Exercise claim as entirely derivative of the free-speech claim and therefore extinguished by the same "policymaker" label.

This is precisely the error the Supreme Court condemned in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018). There, the Court held that the First Amendment prohibits the government from imposing religious tests or penalizing individuals because of their faith—particularly when government officials act with hostility toward religious beliefs. *Id.* at 634–38. Here, Mayor Gloria vetoed Pastor Hodges' reappointment expressly because of his sincerely held religious belief that human sexuality is binary and that transgenderism is sinful. That belief does not lose its religious character merely because it touches on a contested social or political issue. *See* Appellant's Br. at 30–33.

Even where religious expression overlaps with political speech, the constitutional analysis must still include a distinct Free Exercise inquiry. The Supreme Court has repeatedly emphasized that the Free Exercise Clause and Free Speech Clause "work in tandem," with religious speech receiving overlapping and heightened protection. *Kennedy*, 597 U.S. at 523–24 ("Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities."). In *Kennedy* itself, the Court analyzed Coach Kennedy's claims under both clauses separately—even though they arose from the identical conduct. *Id.* at 525–36. The panel's refusal to do the same here is in conflict with the practice of the Supreme Court.

11

Under the proper Free Exercise analysis, a plaintiff first shows that the government has burdened sincere religious practice. The First Amendment "protects not only the right to harbor religious beliefs inwardly and secretly" but, more importantly, "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life." *Kennedy*, 597 U.S. at 524. If that burden is established, the government must demonstrate that its action serves a compelling interest and is narrowly tailored to achieve it. *Id.* at 532; *see also Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("[O]nly those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion").

Here, the burden is clear: Mayor Gloria gave Pastor Hodges a choice to either abandon his religious beliefs on human sexuality and gender or lose his volunteer position on the Police Advisory Board. *See* Appellant's Br. at 30; Dkt. No. 19.1, Appellee's Answering Brief at 36–37. Yet, the panel never required the government to justify this action under strict scrutiny. By recharacterizing Pastor Hodges' religious convictions as mere "political rhetoric," the panel effectively permitted the Mayor to impose a religious test for public service—the very evil the Supreme Court has long forbidden. *See Torcaso*, 367 U.S. at 495 ("neither a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion'"); *Everson v. Bd. of Educ. Of Ewing Twp.*, 330 U.S. 1, 15–16 (1947) ("No person can be punished for entertaining or professing religious beliefs or disbeliefs . . . .").

While "commonality of political purpose" may sometimes be a legitimate requirement for certain government positions, commonality of religious belief never

can be. The panel's approach sets a dangerous precedent that conflicts with the core purpose of the First Amendment.

**C.     The Panel's Application of the Policymaker Exception Conflicts With the Approach of Every Other Appellate Circuit; Therefore, *En Banc* Review is Necessary to Clarify The Circuit Split or Provide Uniformity.**

Federal Rule of Appellate Procedure 40 authorizes *en banc* review when "the panel decision conflicts with an authoritative decision of another United States court of appeals." Fed. R. App. P. 40(b)(2)(C). Every other circuit applies *some form* of *Pickering* balancing—or at least a more nuanced inquiry—when a policymaker is removed for speech or religious expression. *See* Appellant's Br. at 26-29. The Ninth Circuit's categorical rule is the outlier:

- **D.C. Circuit**: Requires a three-step inquiry asking whether the speech "relate[s] to policy for which [the employee] is responsible." *Hall v. Ford*, 856 F.2d 255, 310 (D.C. Cir. 1988).

- **First Circuit**: Applies a weighted *Pickering* analysis and notes the outcome would differ if the speech were unrelated to the employee's duties. *Flynn v. City of Bos.*, 140 F.3d 42, 47-48 (1st Cir. 1998).

- **Second Circuit**: Limits the exception to speech "closely related to political affiliation"; otherwise, the employee retains speech rights. *Adler v. Pataki*, 185 F.3d 35, 46-48 (2d Cir. 1999).

- **Third Circuit**: Expressly prefers the *Pickering* framework for mixed speech/affiliation cases because it better accommodates both employee and

13

governmental interests. *Curinga v. City of Clairton*, 357 F.3d 305, 309-13 (3d Cir. 2004).

- **Fourth Circuit**: Uses a "weighted" *Pickering* analysis that still requires balancing. *Borzilleri v. Mosby*, 874 F.3d 187, 194-95 (4th Cir. 2017).

- **Fifth, Sixth, Seventh, Eighth, and Tenth Circuits**: All require *Pickering* balancing (with extra weight for policymakers) when the speech does not directly implicate the employee's political or policy views. *See* Appellant's Br. at 22-26 (collecting *Barker v. City of Del City*, 215 F.3d 1134 (10th Cir. 2010); *Bonds v. Milwaukee Cnty.*, 207 F.3d 969 (7th Cir. 2000); *Rose v. Stephens*, 291 F.3d 917 (6th Cir. 2002); *Hinshaw v. Smith*, 436 F.3d 997 (8th Cir. 2006); *Brady v. Fort Bend Cnty.*, 145 F.3d 691 (5th Cir. 1998)).

The Eleventh Circuit has expressly noted the Ninth Circuit's outlier status and declined to follow it. *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1346 (11th Cir. 2014). Judge Barker's concurrence candidly acknowledges that the Ninth Circuit's approach "differs from the approach used in other circuits." *Hodges*, 2026 WL 540374, at *3 (Barker, J., concurring). *En banc* review is the only mechanism to restore uniformity and prevent forum-shopping within the federal courts. The panel's approach cannot be reconciled with the decisions of sister circuits. *En banc* review is necessary to restore uniformity to this circuit's First Amendment jurisprudence.

## IV. CONCLUSION

The panel decision transforms a narrow exception for political patronage into a blanket license for elected officials to exclude citizens from public service based

on disfavored religious speech. It conflicts with Supreme Court precedent, deepens a circuit split, and presents a question of exceptional importance. For these reasons, and those set forth in Appellant's Opening Brief (incorporated by reference), Appellant respectfully requests that the Court grant rehearing *en banc*.

Respectfully submitted,

/s/ Julianne Fleischer_____
Julianne Fleischer
Advocates for Faith & Freedom
Robert Tyler, CA Bar No. 179572
btyler@faith-freedom.com
Julianne Fleischer, CA Bar No. 337006
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone: 951.600.2733

15

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) and 9th Cir. Rule 40-1(b). This document is proportionally spaced and, not counting the items excluded from the length by Fed. R. App. P. 32(f), contains 3,621 words.

This document complies with the type-case requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

/s Julianne Fleischer_____
Julianne Fleischer

16

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Ninth Circuit. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s Julianne Fleischer_____
Julianne Fleischer